**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
| | x | |
| MATTHEW MCKENNA, | x | |
| | x | |
| Petitioner, | x | |
| | x | Civ. Action No. 06-3190 (SRC) |
| v. | x | |
| | x | **OPINION** |
| UNITED STATES OF AMERICA, | x | |
| | x | |
| Respondent. | x | |
| | x | |

_____

**CHESLER, District Judge**

## I.    INTRODUCTION

This matter comes before the Court on Petitioner Matthew McKenna's ("McKenna")

motion for summary judgment, pursuant to FED. R. CIV. P. 56, on his petition to vacate, set aside,

or correct his sentence, pursuant to 28 U.S.C. § 2255, and on Respondent United States of

America's motion to dismiss for failure to state a claim upon which relief can be granted. For the

reasons that follow, Petitioner's motion for summary judgment is **DENIED** and Respondent's

motion to dismiss is **GRANTED**.

## II.    BACKGROUND

On March 18, 2004, a federal Grand Jury sitting in Trenton, New Jersey returned an

Indictment charging McKenna with: (1) engaging in wire fraud by directing interstate wire

transfers from his employer's trust accounts into his personal bank accounts (Count 1); (2)

engaging in money laundering by directing these transfers knowing that the property involved

represented the proceeds of unlawful activity (Counts 2-6); and (3) filing false and fraudulent

1

federal income tax returns for four years (Counts 7-10).

At arraignment, on March 24, 2004, McKenna entered a plea of not guilty.  On December 31, 2004, represented by counsel, McKenna and the United States executed a plea agreement which contained, inter alia, this provision:

> 10.    MATTHEW MCKENNA knows that he has, and voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255 . . .  Furthermore, if the sentencing court accepts a stipulation, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so.

(Plea Agreement Sched. A, Resp. Br. Ex. A.)  This provision appeared in Schedule A of the Plea Agreement, incorporated into the agreement on page 4 as an agreement to stipulate at sentencing to the statements set forth in Schedule A.  (Plea Agreement at 4, Resp. Br. Ex. A.)

On January 3, 2005, this Court held a hearing at which McKenna, represented by attorney Scott Krasny, Esq., asked to withdraw his not guilty plea and to change his plea to guilty on Counts 1 and 10 in the indictment, pursuant to the plea agreement, which was filed with this Court.  Petitioner entered a guilty plea and this Court conducted a detailed plea allocution.  (Jan. 3, 2005 Hr'g Tr., Resp. Br. Ex. C.)

This Court conducted a detailed inquiry to ensure that McKenna's decision to enter a guilty plea was knowing, intelligent, and voluntary.  After this Court explained the charges against him, McKenna stated that he understood the nature of the charges and the maximum penalties.  (Jan. 3, 2005 Hr'g Tr. 7.)  This Court then explained to McKenna the rights he was giving up by pleading guilty.  (Id.)  Under oath, McKenna stated that he had read the entire plea agreement, discussed it with his attorney, and understood it.  (Id. at 9-10.)  McKenna stated that

his decision to plead guilty was his own free and voluntary decision, and that he was pleading guilty because he was, in fact, guilty of the charges in Counts 1 and 10 of the Indictment. (Id. at 10.) McKenna agreed that, while ordinarily a defendant has a right to appeal a sentence, he was giving up that right, as well as the right "to make any other post conviction challenge of that sentence under certain circumstances." (Id. at 14.) McKenna stated that he had discussed giving up those rights with his attorney, and that he was satisfied with Mr. Krasny's explanations. (Id. at 15.) This Court then asked McKenna in three different ways if he agreed to give up his right to appeal and post-conviction challenge; three times, McKenna answered that he did understand this and he agreed to it. (Id. at 15-16.)

This Court then questioned McKenna about the medications he had taken within the previous 24 hours. (Id. at 19.) McKenna said that he had taken Klonopin the previous night and that morning for anxiety, and that the dose he was taking did not interfere with his ability to think and understand. (Id. at 20.) He stated that he had taken Gabitril, to prevent anxiety, the previous night. (Id.) He said that he had taken Seroquel, for bipolar mania, the previous night, and that this medication sedates him. (Id. at 21.) This exchange followed:

> The Court: Are you feeling sedated now?
> Def.: I feel okay right now.
> . . .
> The Court: Okay. Does that affect your ability to think and understand what's going on?
> Def.: No.

(Id.) McKenna then stated that he had taken Wellbutrin that morning for depression, and that it did not affect his ability to think and understand. (Id.) McKenna said that he had not taken any medications that he had not disclosed. (Id.) The Court then discussed with McKenna his

psychiatric conditions and the treatment he had been receiving for them.  (Id. at 22-23.)

McKenna then described his employment history to the Court in some detail.  (Id. at 24-26.)  McKenna's statements were clear, coherent and rational.  The Court then questioned McKenna about the facts which formed the basis for the criminal charges, and McKenna stated that he had, without authorization from anyone, caused approximately $592,034.50 to be transferred from his employer's bank accounts into his personal accounts.  (Id. at 26-29.)  He stated as well that he had filed a false and fraudulent 2002 federal income tax return.  (Id. at 30.)

The Court then questioned McKenna's attorney, Scott Krasny.  Krasny said that he had consulted with McKenna after he had taken his medications in the morning and before the hearing.  (Id. at 31.)  Krasny stated that he had discussed the plea agreement with McKenna and that there was not anything that led Krasny to believe that there was "any question about his capacity to understand, appreciate the nature of these proceedings or that suggest that he's in any way incompetent to enter a guilty plea in this matter."  (Id. at 32.)

On this record, this Court determined that there was no reason to believe that either McKenna's medication or illnesses had affected his capacity to understand and appreciate the proceedings or had rendered him incompetent in any way to enter a guilty plea.  (Id.)  The Court found that the decision to enter a guilty plea was a knowing, intelligent and voluntary one, and that there was an adequate factual basis to support entry of a guilty plea.  (Id.)

The Court conducted a sentencing hearing on August 29, 2005.  The Court sentenced McKenna to a term of 41 months of imprisonment on each count, to run concurrently; three years of supervised release; and restitution of $592,034.50.  The Court dismissed Counts 2 through 9 of the Indictment.

On July 5, 2006, Petitioner filed the instant petition for habeas corpus relief under 28

U.S.C. § 2255.  Pursuant to the Court's Order, the Government submitted its response, both

opposing the motion for summary judgment and moving to dismiss under FED. R. CIV. P.

12(b)(6), and McKenna submitted a reply.

## III.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party

demonstrates that there is no genuine issue of material fact and the evidence establishes the

moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S.

317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for

the non-movant, and it is material if, under the substantive law, it would affect the outcome of

the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion

for summary judgment, a district court may not make credibility determinations or engage in any

weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all

justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241,

247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show

affirmatively the absence of a genuine issue of material fact: it must show that, on all the

essential elements of its case on which it bears the burden of proof at trial, no reasonable jury

could find for the non-moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting

United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)).  "[W]ith

respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the

moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

6

B.      The Rule 12(b)(6) Motion to Dismiss

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See Morse v. Lower Merion School District, 132 F.3d 902, 906 n.8 (3d Cir. 1997). All reasonable inferences, however, must be drawn in the plaintiff's favor. See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the elements exist. See FED. R. CIV. P. 8(a)(2); Conley, 355 U.S. at 45-46. "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

7

IV.    **DISCUSSION**

In the initial brief filed with the motion for summary judgment, Petitioner contends, in summary, that his sentence should be vacated because his Indictment was constitutionally defective.  On December 14, 2006, Petitioner filed a supplementary brief in which he argued that he pled guilty to conduct which is not a federal crime, and that this constitutes actual innocence which "present[s] exceptional circumstances that justify collateral relief under § 2255."  Davis v. United States, 417 U.S. 333, 346-347 (1974).

In opposition, the United States contends, in brief, that Petitioner waived his right to collaterally attack his sentence by entry of an unconditional plea agreement with provisions waiving the right to appeal and to make a collateral attack.

In reply, Petitioner contends that: 1) his guilty plea was not voluntary because of ineffective assistance of counsel, based on counsel's failure to investigate Petitioner's psychiatric history, and counsel's failure to appeal the conviction; 2) his waiver of his right to file a § 2255 petition was not intelligent and competent, due to mental illness and drug ingestion; and 3) the waiver should not be enforced because it works a miscarriage of justice.  This appears to capture Petitioner's arguments for summary judgment; Petitioner's briefs do not contain coherent arguments, but only loosely organized argument fragments.

A.    Was the guilty plea involuntary due to ineffective assistance of counsel?

In Strickland v. Washington, 466 U.S. 668, 687 (1984), the Supreme Court held that a petitioner seeking to have his conviction overturned for ineffective assistance of counsel under the Sixth Amendment must show that (1) his counsel was defective, and (2) his defense was prejudiced by this defective performance.  As articulated by the Third Circuit, "the defendant

must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." Carpenter v. Vaughn, 296 F.3d 138, 149 (3d Cir. 2002).

In Hill v. Lockhart, 474 U.S. 52, 58 (1985), the Supreme Court held that "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." Thus, "[u]nder Hill, a defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of such a plea by showing that counsel's performance fell beneath the standard articulated in Strickland . . ." United States v. Ordaz, 111 Fed. Appx. 128, 131-132 (3d Cir. 2004).

Petitioner has offered nothing to satisfy either Strickland prong: he points to no evidence either that his attorney's representation fell below an objective standard of reasonableness, nor that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. There is a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. There is nothing in the present record to support an attack on the voluntary and intelligent character of his plea based on the ineffective assistance of counsel, regarding the allegation that counsel failed to investigate his psychiatric history.

As to the argument that ineffective assistance of counsel is shown in his attorney's failure to file an appeal, this cannot logically result in a defective guilty plea: any failure to appeal can only occur after the guilty plea and thus has no relevance to a claim of ineffective assistance of counsel at the plea hearing. Moreover, even if this argument were not irrelevant, the present record indicates that Petitioner waived his right to appeal. Thus, he could not have suffered

prejudice from his attorney's not appealing.

      B.     <u>Was the waiver invalid because it was unintelligent or incompetent?</u>

Petitioner correctly cites the law of the Third Circuit on waivers: "Waivers of appeals, if entered into knowingly and voluntarily, are valid, unless they work a miscarriage of justice." <u>United States v. Khattak</u>, 273 F.3d 557, 563 (3d Cir. 2001).[1]

Petitioner challenges the validity of his waiver, claiming that he was incompetent at the time, due to mental illness and drug ingestion. "The test for incompetence is [] well settled. A defendant may not be put to trial unless he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him." <u>Cooper v. Okla.</u>, 517 U.S. 348, 354 (1996) (quotation omitted). At the plea allocution, this Court found that McKenna had the ability to consult with his attorney with a reasonable degree of rational understanding of the proceedings against him. Petitioner has presented no evidence to the contrary. McKenna points to his history of psychiatric illness and his ingestion of drugs, but these were the subject of colloquy at the allocution, and were considered by this Court when it found him competent. McKenna articulates no specific way in which this Court erred in its determination of his competence, and provides no basis for this Court to conclude that he was not competent. Rather, he offers this Court only the conclusory assertion of his incompetence, unsupported by evidence.

---

[1] <u>Khattak</u> involved the right to file an appeal, rather than a collateral attack, and the Third Circuit has not yet ruled on the question of whether the <u>Khattak</u> standards apply to § 2255 petitions. <u>See</u> <u>United States v. Wilson</u>, 429 F.3d 455, 460 n.6 (3d Cir. 2005). In a non-precedential opinion, however, the Third Circuit held that a waiver of the right to collaterally attack a sentence is valid if it is valid under <u>Khattak</u>. <u>United States v. Perry</u>, 142 Fed. Appx. 610, 611 (3d Cir. 2005).

Moreover, the record shows that, at the plea hearing, Petitioner consistently made representations that indicated that he was competent.  Repeated questioning by the Court produced not even one response suggesting that McKenna was having difficulty understanding the proceedings against him.  In this context, Petitioner cannot succeed on summary judgment merely by arguing that, despite his representations to the contrary, he was not competent.  In this context, it is quite appropriate to place on Petitioner at least the burden of production of evidence that he was not competent.

This is not in conflict with the Third Circuit's decision in United States v. Hollis, 569 F.2d 199, 205 (3d Cir. 1977).  That Court held that, although "in habeas cases the general rule is that the petitioner himself bears the burden of proving that his conviction is illegal," that case merited an exception.  Id.  In that case, the Court held that it would be inappropriate to have the petitioner bear the burden of proving his incompetence.  Id. at 207.  The Court explained that the burden should not be placed upon a petitioner "who raised the issue of his incompetency before pleading guilty but was not afforded an opportunity to establish incompetency prior to conviction," "since the issue was raised but was not litigated prior to conviction through no fault of the accused."  Id.  In contrast, the instant case does not concern a petitioner who raised the issue of his incompetency but was not afforded an opportunity to establish it.  Rather, this case involves a petitioner who, despite having been provided with numerous opportunities to signal mental difficulties, declared under oath that there was no impairment of his ability to think and understand.  This is not to prejudge McKenna's challenge to his sentence based on an incompetence argument, but only to explain why he is not entitled, in the present context, to avail himself of the burden-shifting mechanism in Hollis.

11

The United States contends that Petitioner made a valid waiver of his right to make a collateral attack on his sentence, and asks that the waiver be enforced and that McKenna's § 2255 petition be denied.  The United States aptly cites the Third Circuit's non-precedential decision in Perry.  In Perry, the Court upheld a waiver of the right to file a collateral attack, holding that, since the petitioner did not present any evidence that his waiver was unknowing or involuntary, and finding that the waiver therefore was valid under Khattak, there was "no basis in the record to question the validity or applicability of that waiver."  Perry, 142 Fed. Appx. at 612. Similarly, in the instant case, Petitioner has presented no evidence that the waiver was unknowing or involuntary, nor that he was incompetent to plead guilty.  As such, this Court has no basis to invalidate the waiver so as to reach Petitioner's arguments in support of the motion for summary judgment.

C.    Does enforcing the waiver work a miscarriage of justice?

Petitioner relies on the exception in Khattak which declines enforcement of waivers which work a miscarriage of justice.  McKenna contends that his waiver works a miscarriage of justice because he was convicted of acts that the law does not make criminal.  Khattak gives further guidance on what a miscarriage of justice entails: "There may be an unusual circumstance where an error amounting to a miscarriage of justice may invalidate the waiver."  Khattak, 273 F.3d 557 at 563.  Thus, a miscarriage of justice situation involves an underlying error in the administration of justice.

Petitioner makes two different arguments based on the idea that he was convicted of acts that the law does not make criminal.  The first is that the Indictment set forth conduct that was not in fact a crime.  The Court rejects this contention.  The Indictment alleged that, between 1999

12

and 2003, Petitioner directed 176 unauthorized wire transfers from his employer's bank accounts into his personal bank accounts, and also that he filed a false and fraudulent tax return.  At the plea hearing, this Court reviewed the allegations in detail and Petitioner admitted that they were true.  (Jan. 3, 2005 Hr'g Tr. 24-31.)  This Court finds no grounds to conclude that the allegations set forth in the Indictment do not constitute a crime.  Enforcing the waiver does not work a miscarriage of justice.

Petitioner also argues that an error sufficient to constitute a miscarriage of justice occurred at his plea hearing: when he pled guilty, he "mistakenly believed that the conduct to which he was admitting satisfied each element of the statutes under which he was charged." (Pet. Supp. Br. 2.)  Even assuming, for the sake of discussion, that this is correct and he was truly mistaken, this is Petitioner's error, not the Court's error in administering justice.  A defendant's mistaken understanding of the law does not appear to be the kind of error that the Khattak Court envisioned as working a miscarriage of justice such that the waiver of collateral attack is invalid. McKenna has not provided this Court with a basis to conclude that enforcing the waiver to which he agreed will work a miscarriage of justice.

Petitioner has presented no evidence to support his arguments that his waiver is invalid. Rather, the present record supports the conclusion that Petitioner, assisted by counsel, entered into a plea agreement in which he made a knowing, voluntary waiver of his right to make a collateral attack on his sentence.  Because the present record supports the United States' position that Petitioner waived his right to make a collateral attack on his sentence, and contains no evidence that McKenna's waiver is invalid, this Court does not reach his original arguments for summary judgment (i.e., his indictment was constitutionally defective, and he is actually

13

innocent.)  McKenna has thus not shown that he is entitled to judgment as a matter of law, and his motion for summary judgment will be denied.

The principles stated in <u>Khattak</u>, under which this Court has now determined that McKenna made a valid and enforceable waiver, have just been confirmed by the Third Circuit in <u>United States v. Gwinnett</u>, 2007 U.S. App. LEXIS 9464 (3d Cir. filed April 26, 2007).  In <u>Gwinnett</u>, the Court determined the validity of a waiver of appealability provision in a guilty-plea agreement.  <u>Id.</u> at *4.  In doing so, the Third Circuit performed a series of inquiries.  First, it looked to see whether the language of the plea agreement was "clear as to its purpose and effect. . ."  <u>Id.</u> at *9.  Second, it examined the colloquy between the sentencing judge and the defendant at the plea hearing to determine whether the record showed that the defendant's waiver was entered into knowingly and voluntarily.  <u>Id.</u> at *13.  Last, the Court found that the defendant had "failed to establish that enforcing the waiver will result in manifest injustice."  <u>Id.</u> at *15.

This Court has examined the plea agreement, the plea hearing colloquy, and the Defendant's arguments of injustice.  The waiver provision in the plea agreement is clear as to its purpose and effect, the colloquy shows that Petitioner's waiver was entered into knowingly and voluntarily, and Petitioner's arguments have failed to establish that enforcing the waiver will result in manifest injustice.  Following the inquiry set forth in <u>Gwinnett</u>, this Court determines that the waiver is valid and enforceable.

Respondent has moved to dismiss the Petition for failure to state a claim upon which relief can be granted.  Petitioner's sole argument in opposition is that a 12(b)(6) motion is not appropriate in a habeas proceeding under <u>Browder v. Director, Dep't of Corrections</u>, 434 U.S. 257, 269 (1978).  Petitioner's position is not supported by the current rules of procedure.  FED. R.

Civ. P. 81(a)(2) states: "These rules are applicable to proceedings for admission to citizenship, habeas corpus, and quo warranto, to the extent that the practice in such proceedings is not set forth in statutes of the United States, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Proceedings, and has heretofore conformed to the practice in civil actions."  Thus, Rule 12(b)(6) would be inapplicable only if the Rules Governing Section 2255 Proceedings set forth a contrary rule of procedure, which it does not: the Rules Governing Section 2255 Proceedings set forth no rule precluding a motion to dismiss under Rule 12(b)(6).

To the contrary, Rule 4(b) of the Rules Governing Section 2255 Proceedings empowers this Court to dismiss a petition on review: "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . ."  Although Rule 4(b) contemplates that such review will take place when the motion is initially filed, nothing in the Rules prevents this Court from following this rule now.  Based on the current motions, the exhibits, and the record of prior proceedings, this Court determines that the moving party (Petitioner) is not entitled to relief under 28 U.S.C. § 2255, as he is subject to a valid and enforceable waiver of the right to relief under this statute. The motion of the United States of America will be granted and the Petition will be dismissed. Because this Court has found a valid and enforceable waiver of the right to make a collateral attack under § 2255, the Petition will be dismissed with prejudice.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2).  A substantial showing is made when "issues are debatable among jurists of reason; [or] a court could resolve the issues [in a different manner]; or [] the questions are adequate to deserve

encouragement to proceed further," <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983).  Petitioner

has not made a substantial showing of the denial of a constitutional right, and no certificate of

appealability shall issue.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's motion for summary judgment is **DENIED**.

Respondent's motion to dismiss the Petition is granted, and the Petition is **DISMISSED** with

prejudice.  No certificate of appealability shall issue.


                        ___ s/ Stanley R. Chesler_____
                        STANLEY R. CHESLER, U.S.D.J.


Date:   May 3, 2007